UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| JUAN SIMENTAL–UNZUETA | ) | |
| | ) | |
| | ) | No. 2:04-CR-79 |
| v. | ) | No. 2:06-CV-258 |
| | ) | Judge Ronnie Greer |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

# MEMORANDUM OPINION

Juan Simental–Unzueta ("Simental-Unzueta" or "petitioner"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody" [Doc. 281]. The United States has responded in opposition, [Doc. 307], and the petitioner has replied [Doc. 309]. An evidentiary hearing was conducted on October 6, 2008. For the reasons which follow, the petitioner's § 2255 motion lacks merit, and the motion will be denied.

**I.      Procedural and Factual Background**

Petitioner was one of nine defendants indicted by the federal grand jury on November 16, 2004, on a charge of conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine. Pursuant to a negotiated plea agreement, petitioner pled guilty to the indictment on May 23, 2005. A presentence

report ("PSR") was ordered. The probation office determined the petitioner's advisory guidelines range to be 97 to 121 months; however, petitioner was subject to a statutory minimum mandatory sentence of ten (10) years pursuant to 21 U.S.C. § 841(a)(1)(A), resulting in a restricted guideline range of 120-121 months. Neither the petitioner nor the government objected to the PSR and the defendant was sentenced on August 1, 2005, to the statutory minimum mandatory sentence of 120 months. Judgment was entered on August 11, 2005. No direct appeal was filed and the judgment became final.

On December 11, 2006, the petitioner's § 2255 motion was filed. By order entered on March 20, 2007, the petition was denied as untimely. The petitioner then moved the Court for reconsideration and provided proof that he had in fact timely delivered his petition to prison officials for mailing on July 31, 2006. The motion for reconsideration was granted and the matter was restored to the Court's active docket on January 11, 2008.

At the time of the entry of petitioner's guilty plea, certain facts were stipulated by the petitioner in connection with his plea:

> Through the testimony of several witnesses, the government would demonstrate, beyond a reasonable doubt, that from approximately the month of March, 2004, and continuing to on or about November 16, 2004, the defendant did knowingly, intentionally and without authority conspire with at least one other person to distribute and possess with

2

the intent to distribute at least five kilograms but less than fifteen kilograms of a mixture or substance containing a detectable amount of cocaine a Schedule II, controlled substance.

In furtherance of the conspiracy, defendant Simental–Unzueta supplied kilogram quantities of cocaine to co-conspirator Fernandez–Rico for further distribution in the Johnson City/Morristown area of the Eastern District of Tennessee.

On August 14, 2004, in an intercepted conversation, co-defendant Fernandez–Rico ordered two ounces of cocaine from defendant Juan Simental–Unzueta who said he had five ounces of cocaine available but three were already promised.

On August 19, 2004, co-defendant Fernandez–Rico sold to undercover agents a kilogram of cocaine for $24,000.00. Once the transaction was confirmed to take place, Fernandez–Rico telephoned defendant Juan Simental–Unzueta and in an intercepted conversation, they agreed to meet and discuss the particulars of the transaction. In another intercepted telephone call on August 19, 2004, an hour before the transaction, Fernandez–Rico told defendant Simental–Unzueta that he had already surveilled the transaction site and the customer (the undercover agent) was already there waiting. During the transaction itself Fernandez–Rico met the undercover agent and was paid the $24,000.00. Once he had the money Fernandez–Rico telephone co-defendant Jose Alberto Chavez–Llanos and in an intercepted conversation told Chavez–Llanos to come to the deal site. Chavez–Llanos was surveilled by agents traveling from a nearby car wash to the deal site and once he arrived, he delivered the kilo to one of the undercover agents. Immediately after the transaction Fernandez–Rico and Chavez–Llanos were surveilled as they traveled back to the car wash and were observed meeting with defendant

3

Simental–Unzueta.

On September 3, 2004, in an intercepted conversation, defendant Simental–Unzueta told co-defendant Fernandez–Rico that two kilograms of cocaine were being delivered and he needed money that Fernandez–Rico owed to pay for the cocaine.

On October 20, 2004, a Johnson City Police officer stopped a vehicle occupied by co-defendant Felix Carlos, Jaime Vargas Quintanilla and Aldrich Vellejo–Villareal. During a consent search, the officers seized five kilograms of cocaine from the trunk of the vehicle. The co-defendants were taking the five kilograms of cocaine to an apartment on Bell Ridge Road, Johnson City, Tennessee, which was regularly used by co-defendant Fernandez–Rico as a stash house and meeting location and referred to in intercepted conversations as "the office."

## II. Standard of Review

This Court must vacate and set aside petitioner's conviction upon a finding that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255(b). When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green*, 454 F.2d

4

at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). To warrant relief for a nonconstitutional error, petitioner must show a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996), *cert. denied*, 517 U.S. 1200 (1996).

### III. Analysis and Discussion

In his § 2255 motion, petitioner raises two claims of ineffective assistance of counsel. First, he claims ineffective assistance of counsel for failing to file a notice of appeal after being requested by the petitioner to do so and failing to consult with the petitioner about an appeal after sentencing and secondly, ineffective assistance of

5

counsel for advising defendant to make erroneous or false admissions during his change of plea hearing.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defendant, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Id.* at 689-90. A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy,* 99 F.3d 1302, 1311(6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled

6

guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56,59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a bare assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), *quoting Strickland*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

### A. Failure to File Notice of Appeal

Petitioner's first stated ground for relief under § 2255 is stated as follows: "Ineffective assistance of counsel for failing to file appeal after being requested to do so and failing to consult with movant after sentencing as promised." The petitioner offers the following statement of supporting facts in support of his first ground for relief: "After his sentencing on August 1, 2005, Movant immediately told his counsel that he would like to appeal. In response, counsel told Movant, "Okay, I'll be to talk to you soon." Despite counsel's response of "Okay" and despite his promise to come

7

and see him, counsel did not file Movant's appeal nor did counsel come to see Movant and thus consult with him concerning his stated wishes or desire to have his appeal filed."

In the context of a failure by counsel to file a notice of appeal, the question of whether such failure constitutes ineffective assistance of counsel is governed by the rule set forth in *Roe v. Flores-Ortega,* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that an attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Id.* at 477. Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed. *Id.* at 483. If the petitioner did not specifically direct his attorney to file an appeal, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes. *Id.* at 478. If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal. *Id.* If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult. *Id.* Consulting a client about appealing is not constitutionally required in every case. "We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* at 479 (emphasis in

8

original).

An attorney has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal), or (2) his client reasonably demonstrated an interest in appealing. *Id.* at 480. In making this determination, courts must take into account all the information counsel knew or should have known at the time. *Id.* Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights. *Id.* Because the failure to file a notice of appeal results, not in the denial of a fair proceeding, but in the denial of a proceeding all together, the prejudice prong of the *Strickland* test for ineffectiveness of counsel in this context requires the petitioner to demonstrate that, but for his counsel's omission, there is a reasonable probability that he would have timely appealed. *Id.* at 480.

This is not a case where petitioner's attorney has a duty to file a notice of appeal because he was requested by the petitioner to do so. Although the petitioner alleges in his petition, filed under penalty of perjury, that he immediately told counsel after sentencing that he would like to appeal, that assertion was contradicted by the petitioner's attorney at the evidentiary hearing, as well as by the petitioner's own testimony. At the evidentiary hearing, petitioner's attorney, James D. Bowman, who

9

was privately retained to represent the petitioner and who is a very experienced criminal defense attorney who has practiced in this Court for many years, testified unequivocally that, although petitioner expressed a lack of understanding concerning his sentence at the conclusion of the sentencing hearing, petitioner never said anything to him about an appeal nor did he say anything which would have indicated a desire to appeal. Likewise, the petitioner admitted during his testimony that he had never given specific instructions to his attorney to file an appeal and agreed that he only asked his attorney to come and see him after the sentencing hearing. Under these circumstances, the Court finds that no request was made and no specific instructions given to counsel to file an appeal and there is no *per se* violation of the petitioner's Sixth Amendment right to counsel. Thus, this Court must next determine whether counsel consulted with the petitioner concerning his appeal rights and, if not, whether counsel had any duty to consult with the petitioner concerning his right to appeal.

It is undisputed from the record in this case that Mr. Bowman did not consult with the petitioner subsequent to his sentencing concerning his right to appeal. In determining whether petitioner's attorney had a duty to consult with him subsequent to sentencing concerning his right to a direct appeal, the Court must apply the two part test set forth above and determine whether or not a rational defendant would want to appeal or whether the particular client reasonably demonstrated an interest in

10

appealing. In making this determination, as set forth above, this Court must take into account all of the information counsel knew or should have known at the time.

From the testimony of Mr. Bowman, it is clear that he carefully and fully advised the defendant of his options before the entry of his guilty plea and that the primary point of contention during the plea negotiations had to do with the quantity of drugs for which the petitioner would be held responsible. More specifically, the petitioner, although directly linked to the distribution of only three or four kilograms of cocaine, was charged as part of a conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine. The petitioner was fully aware of his option to go to trial to escape the mandatory minimum sentence required if convicted of the conspiracy involving five kilograms or more but ultimately decided to plead guilty to the offense charged and attempt to cooperate with the United States in the hope that the government would file a motion for downward departure, allowing the district court to sentence him below the required mandatory minimum ten year sentence. The petitioner did in fact attempt to cooperate but, as announced by the Assistant United States Attorney on the day of sentencing, the United States subsequently determined that the petitioner had not offered substantial assistance and thus did not make the motion for downward departure. The government did, however, make the Court aware of petitioner's attempts to cooperate and, because of that attempt

11

to cooperate, suggested a sentence at the bottom of the guideline range, *i.e.* the ten year mandatory minimum sentence. The petitioner, of course, was ultimately sentenced to the mandatory minimum ten year term of imprisonment.

Based upon these circumstances, the Court concludes that, although counsel did not specifically consult with the defendant concerning his appeal rights immediately after sentencing, counsel had no duty to do so and therefore the failure to do so did not violate the Sixth Amendment. The unrebutted proof in the case establishes that petitioner's attorney never received any indication that the petitioner wished to file an appeal. Given that petitioner had waived his right to a direct appeal in his plea agreement with the United States and the lack of any nonfrivolous grounds for appeal, it was not error for counsel to fail to consult with his client concerning an appeal immediately following the entry of judgment because, on the facts presented, no rational defendant would have desired an appeal.

It is noteworthy that the petitioner has made no attempt to identify any nonfrivolous grounds for appeal and he has not suggested that his waiver of his right to a direct appeal was not knowingly and voluntarily made. Furthermore, although petitioner now asserts that the government should have filed a motion for downward departure and that three individuals he spoke to the government about, although he does not know their last names, have now been prosecuted, he does not suggest any

12

improper motivation on the part of the United States in not filing the motion and the record clearly establishes that he was aware of the government's discretion not to file the motion and that the Court was not required to grant such a motion even if it was filed.

The record also clearly establishes that the waiver of the right to file a direct appeal was knowingly and voluntarily made by the petitioner. The uncontradicted testimony at the evidentiary hearing was that petitioner's attorney fully explained all of his appellate rights to him in the context of their discussion concerning the waiver of appellate rights contained in the plea agreement. In addition, the Court established the petitioner's awareness of the appellate waiver during the Court's plea colloquy and advised the petitioner both at the time of the change of plea and after sentencing of his right to appeal. The petitioner never contacted the Court or the Clerk of the Court to express any interest in appealing the Court's sentence. Petitioner's allegation of ineffective assistance of counsel on this ground is without merit.

### B. False or Erroneous Admissions at the Change of Plea Hearing

Petitioner's second ground for relief is stated as follows: "Ineffective assistance of counsel for misadvising Movant to make erroneous or false admissions to the Rule 11 Court." The following statement of supporting facts is provided by the petitioner: "Prior to deciding to waive his constitutional rights and plead guilty Movant had

13

specifically told his counsel that his involvement in the alleged conspiracy consisted of only three (3) to four (4) kilograms of cocaine and no more.  However, counsel told (advised) movant to just admit to five (5) or more because the Court would not believe your only involvement was three (3) to four (4) Kilo's.  Movant contends that had his counsel not misadvised him and not told him to make the erroneous admissions to the Court concerning the drug amounts he would not have pled guilty to five (5) or more kilo' [sic]."

Petitioner here makes the troubling allegation that he was advised by his attorney to lie to this Court at the time of the entry of his guilty plea.  As an initial matter, however, petitioner admitted at the evidentiary hearing that he was advised by his attorney that he could take the issue to trial but that he could get more prison time if convicted rather than pleading guilty.  He acknowledged that he had several discussions with his attorney concerning the amount of drugs involved in the case and that his attorney advised him that he would face a mandatory minimum sentence of ten years if convicted on the charge involving five kilograms or more.  He further testified that he thought he was "pleading to three or four kilos" and that his attorney told him the penalty was the same whether his involvement was three or four kilos or five kilos.  He does acknowledge, however, that although Mr. Bowman advised him to accept the plea agreement offered by the government, the ultimate decision to enter into the plea

14

agreement was his.

To the extent that the petitioner is alleging that he was coerced into pleading guilty by his attorney or that he was advised by his attorney to lie to the Court at the change of plea hearing, this Court does not find such allegations to be credible and they are contradicted by the credible testimony of his attorney. Likewise, petitioner's assertion that he thought he was only pleading guilty to three or four kilos involvement lacks credibility as well. Furthermore, petitioner's credibility is severely undermined by his assertion in his petition, under penalty of perjury, that he had directed his attorney to file a notice of appeal, an assertion he recanted in his own testimony at the evidentiary hearing.

In addition, this Court scrupulously followed the requirements of Federal Rule of Criminal Procedure 11 and conducted a proper, clear, and thorough plea colloquy. A trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on the [defendant's] part before the plea was accepted," cures any claim that the defendant was prejudiced by erroneous "advice from [the defendant's] trial attorney [that allegedly] led to [his] misunderstanding of the consequences of [his] guilty plea." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994). Likewise, where the court follows Rule 11, "the defendant is bound by his statements in response to the court's inquiry."

15

*Baker v. United States*, 781 F.2d 85 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The petitioner is thus bound to the answers he provided during the plea colloquy and he cannot now claim otherwise. To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992).

The petitioner clearly acknowledged to this Court that he understood his right to a trial by jury and the other rights accorded to persons accused of a crime, that he understood that by entering a plea of guilty there would be no trial and that there had been no promises made to him that he would receive a lighter sentence or any other form of leniency if he pled guilty. The indictment was read to the petitioner by the Assistant United States Attorney and petitioner acknowledged that he had read the factual basis filed with the Court, that he agreed with the government's summary of what he did as set out in that agreed factual basis, that everything contained in the factual basis was true and that he had signed the document. Based upon those admissions, the defendant was specifically asked how he pled to the indictment "which charges you with a conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine," to which the petitioner replied "guilty." The petitioner was advised of both the mandatory minimum ten year sentence as well as the

16

maximum statutory term of imprisonment of up to life. The petitioner specifically acknowledged that he was aware that the Court could in fact sentence him to life imprisonment.

At the time of sentencing, the Assistant United States Attorney handling petitioner's case represented to the Court that the petitioner had in fact met with law enforcement officers and attempted to provide assistance but that his assistance did not "rise to the level of substantial assistance" and thus the United States would not file a motion for downward departure. The petitioner acknowledged that he had received and reviewed the presentence report prepared in his case and had discussed it with his lawyer and that all the information contained in the presentence report was essentially correct. As with all defendants, the petitioner was given the opportunity to address the Court and he never indicated any disagreement with the government's decision not to file the motion for downward departure, nor did he express any dissatisfaction with his lawyer or any surprise at the sentence imposed. The petitioner was also clearly advised at the conclusion of his sentencing hearing of his right to appeal, that a notice of appeal must be filed within ten days of the entry of the judgment, and that the Clerk of the Court could prepare and file the notice of appeal for him.

In sum, there is nothing in the record in this case which would indicate that the petitioner received erroneous advice from his attorney or that his attorney ever advised

him to make false admissions to this Court. Likewise, there is nothing in the record to suggest that he was pressured in any way by his attorney to enter into the plea agreement in this case. His second ground for relief is also with merit.

## IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his petition **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must also decide whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificates of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2000).

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

18

constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him. For the same reason, petitioner is no longer entitled to representation by court appointed counsel; therefore, the appointment of CJA counsel Sandra B. Jelovsek, who was appointed to represent petitioner at the evidentiary hearing, is TERMINATED.

A separate order will enter.

ENTER:

<u>s/J. RONNIE GREER</u>
UNITED STATES DISTRICT JUDGE

19

Case 2:06-cv-00258   Document 20   Filed 11/04/08   Page 19 of 19   PageID #: 36